UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

————————————————————————

ALICIA N.,

                 Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

————————————————————————

25-CV-00317-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.

Plaintiff Alicia N.[1] ("Plaintiff") brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is denied, and defendant's motion (Dkt. No. 10) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed an application for SSI on July 11, 2022, with an alleged onset date of September 1, 2021. (Administrative Transcript ["Tr."] 292-314). Her claim was denied on November 23, 2022. (Tr. 83-104). Plaintiff filed a written request for a hearing on February 1, 2023. On September 28, 2023, Administrative Law Judge ("ALJ") Anthony Dziepak held a hearing, at which Plaintiff appeared, with counsel, and testified. (Tr. 46-82). A vocational expert also testified. The ALJ issued an unfavorable decision on May 7, 2024. (Tr. 19-45). The Appeals Council denied review, (Tr. 1-6), and this action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart,*

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  Id.

II.      Standards for Determining "Disability" Under the Act

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." Id. §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." Id. §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." Id. §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." Id. §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. Id. §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets

- 4 -

the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  Id. §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  Id. §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  Id. §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  Id. §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  Id. §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  Id. §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  Id. §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  Id. §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot

adjust to other work, he or she is disabled within the meaning of the Act. Id. §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 11, 2022, the application date. (Tr. 24). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical spine disorder, depressive and anxiety related disorders. (Tr. 24-27). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appx. 1. (Tr. 27).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work

> except the claimant requires work in settings with moderate noise levels, such as in an office or business setting, and no flashing lights. The claimant cannot work around unprotected heights. She cannot climb ladders, ropes, or scaffolds. She cannot work in enclosed areas involving exposure to fumes, dusts, gases, or chemicals. She can frequently handle and finger. The claimant can perform simple work tasks in a non-assembly line production-paced setting. She cannot interact with the public or perform team or tandem collaborative projects with co-workers. The claimant can work around co-workers with interactions limited to elective superficial conversations. She can have occasional interaction with supervisors. The claimant can make simple work-related decisions and adapt to simple changes in a routine work setting.

(Tr. 29). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 38). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 38-39). Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 39).

### *Plaintiff's Challenges*

Plaintiff's first challenge is that the ALJ erred at step two by failing to include any limitation in his RFC determination regarding schedule interruptions related to Plaintiff's migraine headaches, despite finding the opinion of consultative examiner Dr. Hongibao Liu, M.D., persuaive.  The Court finds this argument without merit.

Plaintiff argues that the RFC should have included off-task limitations based on Dr. Liu's opinions that her headaches may cause interruptions in scheduled activities. As an initial matter, Plaintiff claims that Dr. Liu opined that she "would have" interruptions in her scheduled activities, when, in fact, Dr. Liu only stated that Plaintiff "may experience" interruptions. (Tr. 610, 1100). Thus, Dr. Liu did not definitively assert that Plaintiff's headaches would interrupt her schedule; nor did he provide any indications as to the expected frequency or duration of such possible interruptions. *Id.*

Plaintiff bears the burden to prove a more restrictive RFC. *Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (2d Cir. 2018) (explaining that plaintiff had a duty to prove a more restrictive RFC than the ALJ found); *Parker v. Berryhill*, No. 17-cv-252-FPG, 2018 WL 4111191, at *4 (W.D.N.Y. Aug. 29, 2018) (same); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."). Here, the opinion that Plaintiff "may" experience some interruptions of

unspecified frequency, intensity and duration – even if persuasive – does not establish the existence of a specific time off task limitation.

Moreover, while Plaintiff argues that the ALJ was required to explain why Dr. Liu's opined limitation on interruptions was not accounted for with off-task limitations, the ALJ's decision must be read as a whole. *See Marie Ann R. v. Comm'r. of Soc. Sec.*, 22-CV-06153-HKS, 2024 WL 3046619, *10 (W.D.N.Y. June 18, 2024) ("Plaintiff's attempt to characterize [the ALJ's] assessment as cursory or deficient … fails because it is well established that an ALJ's decision must be read as a whole.") quoting *Alissa H. v. Comm'r of Soc. Sec.*, 6:23-CV-06064, 2024 WL 1250228, at *8 (W.D.N.Y. Mar. 25, 2024).

Here, the ALJ had already explained in detail why Plaintiff's headaches were non-severe, specifically citing treatment notes from Plaintiff's neurologist that her headaches were "not frequent" and had "not been significant or bothersome." (Tr. 25 citing Tr. 561 ("her headaches have remained under fairly good control. She is experiencing headaches occasionally. They have not been significant or bothersome. They are not frequent. She uses Diclofenac for her headaches with good relief when needed."), 594 ("With regards to her headaches, she reports that those have been better. Her headaches are happening very infrequently. They have not been problematic."), Tr. 988 ("Her headaches have remained under good control. She actually has not had a headache in a couple of months")).

The ALJ's decision need only be sufficient for a reviewing court to glean the ALJ's reasoning. *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (explaining what when "the evidence of record permits us to glean the rationale of the ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have

- 8 -

explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); *Ricky L. v. Comm'r of Soc. Sec.*, No. 20-CV-7102-FPG, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022) ("insofar as the court can adequately "glean" how the ALJ weighed the consistency and supportability factors for Dr. Sandler's opinion [] the Court finds the ALJ's procedural error harmless"). Given the ALJ's detailed explanation at step two as to why Plaintiff's headaches were not severe, there is substantial evidence supporting his decision not to include time off task limitations due to such headaches.

Plaintiff's next challenge is that the ALJ erred by failing to evaluate properly the two opinions of consultative examiner Janine Ippolito, Ph.D., regarding Plaintiff's mental limitations. Again, the Court finds this argument unpersuasive.

> In evaluating the opinions from Dr. Ippolito, the ALJ explained:
>
> After the first examination, Dr. Ippolito opined that the claimant would have moderate limitations in her ability to interact adequately with supervisors, co-workers, and the public, sustaining concentration and performing tasks at a consistent pace, and marked limitations in regulating her emotions, controlling her behavior, and maintaining wellbeing. [Tr. 483]. After the second examination, Dr. Ippolito opined that the claimant would have moderate limitations in regulating emotions, controlling behaviors, and maintaining well-being. [Tr. 1105-06]. Taken together, these opinions are consistent with the evidence of record as the undersigned finds that the claimant has moderate limitations in the areas covered by Dr. Ippolito's opinions. These opinions also appear to capture the claimant's level of functioning as the evidence shows that the claimant can have bad days at times but demonstrated overall improvement with treatment. [Tr. 765, 772, 779, 794, 818, 1046, 1050, 1066, 1069, 1072, 1075-76, 1083]. Therefore, when taken together, Dr. Ippolito's opinions are persuasive.

(Tr. 37).

Plaintiff claims she is entitled to remand because the ALJ improperly evaluated the persuasiveness of Dr. Ippolito's opinions "taken together." This is incorrect. In fact, the

applicable regulations provide that "when a medical source provides multiple medical opinion(s) … we will articulate how we considered the medical opinions … from that medical source together in a single analysis." 20 C.F.R. 416.920c(b)(1). Thus, the "source level articulation" provided by the ALJ here is expressly allowed for under the regulations. *Id*.; *see also Julia K. v Commr. of Social Sec.*, 23-CV-193, 2024 WL 3760344, *6 (W.D.N.Y. Aug. 9, 2024) ("The ALJ is tasked with analyzing medical opinions at the source-level, meaning that the ALJ need not discuss each and every medical opinion in the record, and may apply the factors holistically to a single medical source.").

Further, Plaintiff argues that by not separately considering the opinions, the decision is "unamenable to meaningful review" because it does not explain how the ALJ resolved the inconsistency between moderate limitations in one opinion and marked limitation in the other.  This argument is without merit. As the above quotation shows, the ALJ resolved the inconsistency by finding the moderate limitations consistent with the evidence of record; the ALJ thus implicitly rejected the marked limitations as inconsistent with the record. (Tr. 37). The ALJ supported this conclusion by explaining that the mental health treatment record demonstrated overall improvement with treatment, notwithstanding some bad days. (Tr. 37 citing Tr. 765, 772, 779, 794, 818, 1046, 1050, 1066, 1069, 1072, 1075-76, 1083). The ALJ's rationale for this conclusion is laid out in greater detail in his summary of the longitudinal mental health treatment records. (Tr. 33-36); see also *See Marie Ann R.*, 2024 WL 3046619, *10 (explaining that the ALJ's analysis of medical opinions must be read in the context of the record as a whole). Further, the ALJ explained at step two why he concluded Plaintiff had moderate limitations adapting and managing herself, noting, for example, Plaintiff reported better eating and sleeping

habits, taking care of her health issues, and socializing. (Tr. 28-29 *citing, e.g.*, Tr. 717, 742, 1047, 1050, 1054, 1072).

Plaintiff asserts that the ALJ "fail[ed] to recognize that Dr. Ippolito's *more recent* opinion opined to *more restrictive* limitations indicating a worsening of Plaintiff's mental condition from the first exam to the second." Pl.'s Mem. 11 (emphasis original). This is incorrect; the ALJ discussed the longitudinal treatment record in detail and explained that – contrary to the inference Plaintiff advances – it showed overall improvement. (Tr. 37). Notably, Dr. Ippolito's examinations were seven months apart and both from 2021; accordingly, they are not especially probative of Plaintiff's longitudinal functioning. Indeed, as the ALJ noted elsewhere, a consultative examination from November 2022 found essentially normal mental status findings and opined Plaintiff had no significant mental limitations, rebutting an inference of an overall deterioration of Plaintiff's mental health. (Tr. 35 citing Tr. 612-14).

Indeed, even if Plaintiff's view of the evidence is a reasonable one, it is not the only rational interpretation of the evidence. *Brault*, 683 F.3d at 448 ("once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.") (emphasis original). To the extent Dr. Ippolito's second examination could conceivably show a worsening of Plaintiff's mental impairments, the substantial evidence standard does not require the ALJ to have expressly noted this fact and explained why it did not justify a different outcome. *See id.*, ("An ALJ does not have to state on the record every reason justifying a decision."); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (explaining that an ALJ need not reconcile "every shred" of conflicting evidence).

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is denied and defendant's motion for judgment on the pleadings (Dkt. No.10) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      August 12, 2026
            Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge